is number 16-1627, the Laughlin v. United States. Mr. Montalvo? Good morning, Your Honors. May it please the Court. This is about an enlistment case, and the issue that's in the center of it is Commander Laughlin, who is in the courtroom, ADL. And so sometime during 2003, there was a discussion between the Deputy Chief of the Naval Corps and Commander Laughlin, Mr. Laughlin at the time, and they said the Navy had a need, and the need was to bring him on to active duty. And the benefit of that bargain for concurrent time for coming on to active duty, which is different from what would normally be the case. So the Navy's benefit was they had a manpower need, and this is described in the record, and they needed to bring on a sailor in this particular billet to fulfill a need for the Navy's manpower. But just to clarify here, if one looked just at the regulations, there wouldn't be any error in computing the active duty obligation, correct? The math of 9 is correct. So there is, if you do 4 plus, you know, 3 plus 1, if you do the math, Your Honor, then the math would not change. So the issue is not about the math. So in other words, under the regulations, it was computed correctly? No, Your Honor, because if... Well, I'm leaving to one side, the contract issue for the moment, but under the regulations, the active duty obligation was calculated correctly. Well, it depends, Your Honor, if you're looking at concurrent or consecutive time. So the total amount of time, if Your Honor is referring to, that the total is 9, but if you view it as... What do the regulations say on the page? Don't they say it's not concurrent? No, Your Honor. So if you look at 10 U.S.C. 2123, it defers to... Where do we find that? Is that in the brief? It's one of the statutory authorities, Your Honor. Yeah, but where do we find it? So we can look at it when you're talking about it. Excuse me. I apologize. The one I didn't want, and it gets away. Page 2 and 10 in your brief. Where do you find it? What I'm looking at, Your Honor, is 10 U.S.C. 2123, Echo 3. And so this is discussing the members of the program active duty obligation. Is it quoted in the brief? I believe so, Your Honor. I don't think so. All right, go ahead. May I proceed? Go ahead. So I'll quote the subsection I'm referring to. It says the Secretary of Defense shall prescribe regulations regarding the manner in which alternative obligations be given under the subsection. And so this is one of the titles that is referred to. So that's the authority for prescribing the regulation? In part, yes, Your Honor. So what are the pertinent regulations? What are the pertinent regulations? So if you then go to 5210, or I'm sorry, 5220-41, then you'll see that the... Because what we have is Mr. Laughlin coming on to active duty. Do the regulations say that this can't be concurrent? They're silent on that, Your Honor. The regulations are silent? That's correct. If you look at DOD 6000... And if you look at subsection 6, TAC 6, TAC 3, TAC 2, which is the civilian facility provision, it is silent on whether or not the obligation can run concurrent. It doesn't address that. Can I just back away for a second? Yes, Your Honor. I mean, the questions were background questions to figure out whether what the law or the regulations said about concurrent as opposed to consecutive. And the short of the matter is, in your brief, I don't understand you to be challenging the math. The appeal you're bringing here isn't saying that the numbers got computed the wrong way. I understand your appeal to be that you want the Court of Federal Claims to send your case back to the Board for Correction for Naval Records because there's something they didn't understand when they made their decision in your case. Yes, Your Honor. And what they didn't... I mean, so I don't understand. I mean, the actual numbers that were run up, that the Court of Federal Claims premised in its opinion, you're not challenging that in your appeal. The math of nine is not being challenged, Your Honor. It's the concurrency of how the obligation is to be paid back. So what you're saying is that as a matter of contract, the government agreed to allow these to go concurrently and that that's not contrary to the regulations because the regulation doesn't say anything about concurrent or consecutive. Is that a fair statement? Yes, Your Honor. The subordinate regulation doesn't and the 10 USC 2123 does provide for the service secretaries to waive obligations. So it's within the secretary's discretion how they're going to incur that. Well, I don't understand waiver if the regulation, you say the regulation doesn't deal with a concurrency issue. There's no waiver issue. Well, if you look at the BUMED policy memo that came out, and I'll cite to that. Is that where the concurrency obligation comes from or rule comes from? Well, what ended up happening in the record factually. Where do you say that the regs don't deal with this? I'm reading, looking from the opinion, Appendix 3, third opinion, citing the regulations to say that the regulations for the FAP statute say no portion of activity may be satisfied concurrently with any other active service duty. That's serving, there's a quote, and I think that's we're quoting back to 6.49. That's citing DODI 600.13. Yes, sir. And yes, Your Honor. And that's, I believe, a reference to the subparagraph in that regulation, 6.4.9. And so that's dealing with a separate period of time that we're talking about. If we're looking at. What kind of a separate period? Right, so. I mean, the court of claims judge was of the view that the regulations, on their face, said that you have to serve these things consecutively. Right. There was a misunderstanding as to that particular issue, Your Honor, and if I may. And I didn't understand you to be appealing that. No, Your Honor. The issue, though, is, Your Honor's raising a question. We're now talking about whether or not the regulations have anything to say at all about the concurrent versus consecutive. And I'm certain the government is going to tell us what their view is of that. Sure. So the relevant. Your theory is a implied impact contract theory, right? Yes, Your Honor. That you believe that you can sustain your contract theory based on promises made to you. Yes, Your Honor. And you believe you've got some evidence showing that at least two people who are now retired from the service benefited from the promise that you believe you had. Yes, Your Honor. And there are other people who, for a short period of time, benefited from the promise, but the Navy changed its mind. Yes, Your Honor. As to the others. Yes, Your Honor. And in addition to that, so there are two subsections that the court is potentially referring to. Where does your case fall in the schism, on the schism? If you look at schism, schism says that there is no such thing operable, a contract theory is not operable, where what is at stake is military pay or benefits that are basically dictated by statute or regulation. If so. We have two. There are outlier cases that deal with promises as to the particular type of training you may get when you go into service. For example, if the recruiter promises that you'll learn plumbing skills, but the military doesn't supply those, there's a contract cause of action implied. In fact, contract cause of action doesn't exist. Yes, Your Honor. Why don't the benefits that you're asking for here fall on the other side in schism? Yes, Your Honor. So in schism, the focus was on an entitlement, such as military care. And so this is not an entitlement case. This isn't trying to offend a lack of authority. I understand this isn't a square case falling clearly on one side of schism. But schism has a dividing line. Yes, Your Honor. And the dividing line says certain types of claims can be made under contract, certain can't. Yes, Your Honor. And so we believe that this falls into the enlistment negotiated bargain for benefit category, which schism refers to groki as well. And then we also have Cincerelli. But your case also involved years of service, years of service in tail pay. Yes, Your Honor. Correct? Yes, Your Honor. So your case at heart is the term of service. Yes, Your Honor. So if you look at Cincerelli, which is 662F2-73. There's no question here of a denial of a, that your client was denied the dentistry training that he was seeking to get. Well, it's not a training issue, Your Honor. It's a contracted title. That's where I'm trying to find out where your case falls on the schism law. Yes, Your Honor. So in the negotiated bargain for him to come on active duty, he gave up something and the Navy gained something. Well, what I understand you to be saying, maybe I'm mistaken about this, is that this is not a subject that is concurrent versus consecutive, is not a subject that is dealt with in the statute or regulations. And therefore, it could be the subject of a contract. No. No. Why is what I said wrong? Yes, Your Honor. There are multiple pieces of this regulation. Explain to me why what I said is wrong. Yes, Your Honor. Because some of what the regulation addresses, the subordinate regulation, talks about what you can do on waivers and what you can do with obligated time. Forget about that. Just address my question. My question is, you're arguing that the regulations don't deal with concurrent versus consecutive. Is that correct? They don't address the waiver. Waiver? I don't understand waiver. Do they deal with concurrent versus consecutive? In this specific case, Your Honor, they do not address specifically the issue that is presented in the facts in this case. That's not answering my question. Do they deal with concurrent versus consecutive? There is language that addresses concurrent and consecutive, but as it relates to his presence in a civilian facility, it is silent as to whether it could be concurrent or consecutive. So the authority is delegated to the service secretaries. They can determine how they are going to manage their manpower strength. There are certain benefits, bonuses. The court is well aware of the history of recruitment bonuses and incentives. We're talking about professional. We're talking about a little bit of a different discussion, whereas a regular contract person would come in. This is not just four years and go. We're trying to bring in a medical professional because there's an acute need. So at the time of the benefit of the bargain- If we conclude that the regulations say that it can't be concurrent, how can it be that a contract could vary what's provided in the regulation? That seems to be schism. Because in schism, you're talking about is there authority to do the thing that you're doing. And so what I'm suggesting is the federal statute, which is governing, does grant the service secretary the discretion to make determinations as to the obligated time. And that is 2123. So the law- That's when the statute says we delegate down to make rules and regulations. Correct, Your Honor. 2123 itself doesn't say you can go either way. It says you can make a regulation. So then we look at the regulation. 2123, as I understand it, is simply an authorizing, a power authorizing, a delegating provision. Yes, Your Honor. Which is the way you're sizing it, too. So the section in 6000 DODI, 6000 TAC 13, and the subsection 6.632. 3-2 or .2? .3, .2, Your Honor. So it's on page 14. And so this is under the heading minimum terms of service in ADOs for health professional officers. And then it goes to in a civilian facility. So as the commander was in at the time, he was in a civilian facility doing his training. So when they approached him to negotiate this, he was in a civilian facility continuing his training. So as a member subsidized by the Department of Defense during training, civilian facilities shall incur an ADO of one. And it goes through the math. Then the secretary of the military department may permit the last half of the incurred obligation to be satisfied by service in the selected reserves for a time period equal to the remaining ADO. And that's all it says. And so what they did in this particular case is not addressed by the regulation. And that is the section that addresses his service in the civilian facility, Your Honor. And so then you say, does the service secretary have the authority to do what they did in this case? No, it's not a question of whether the service authority has it. It's a question of whether the particular individuals that you say made these promises had authority to do it. And what's the basis for concluding that they had authority? That's correct, Your Honor. So if we look at the BUMETA instructions, so DODI then says the service secretaries will manage this internally to their departments. And then the secretary of the Navy has delegated that authority to the head or the chief of the Naval Department. And the chief of the Naval Department in the record is reflected as the one who granted the authority for Commander Laughlin to be transferred from his civilian status onto active duty status. Because normally, you would have to apply for a board. And Commander Laughlin did not do that. He did not say, I want to do this. He didn't solicit this from the Navy. The Navy went to him and said, we need you to do this. And this is the benefit that you're going to get. Did you argue this in your briefs? Because I read your briefs as predominantly going to the point that you submitted some additional evidence. And you want to have the case remanded to the board for consideration of that evidence. So did you, I'm just confused. Did you make this particular point in your brief? And if so, where would that be? The brief's focus, Your Honor, was on the fact that after the BCNR made their decision, additional evidence was gathered in the administrative record that they did not previously consider. And that evidence goes to the- It was considered by the secretary. When you appealed up to the secretary from the board, this additional information had been included in the administrative record by then. Mr. Woods- Correct. Considered part of it, Your Honor. Yes, yes, yes, Your Honor. So the information was in front of the secretary. And the secretary declined the relief that you sought. Mr. Woods declined to overturn the BCNR's decision. Right, but he had in front of him the additional information that you believe if we sent it back to the BCR, the BCR would change its mind. Yes, Your Honor. But that information was in the hands of the secretary, became part of the administrative record. Yes, Your Honor. And that information was in front of the Court of Federal Claims. It was, Your Honor. However- What's the purpose of a remand? The remand, if we look at the discussion that was had in the original petition, and we look at the additional evidence, we believe that the board's reconsideration of the additional evidence in totem would give them an opportunity to reconsider the position. I think if you look at the discussion that Mr. Woods had, he relied heavily on Admiral Wagner in making the determination. But if you look at Admiral Wagner's discussion back and forth with Mr. Woods, the issues were, first of all, she came up with two or three different calculations for the number, his ADO. And then she originally said, I do agree that he should be getting the 2012. I will support that because there was an issue- I think, Mr. Montalvo, we're out of time. We'll give you three minutes for rebuttal. Yes, Your Honor. Mr. Molina. May it please the Court. Good morning. Before getting to any of the issues that were raised on this particular appeal, there is one thing I'd like to highlight. It's the government's position that on the assumption that Commander Laughlin is seeking pay at this point, which we believe is distinct from what he was seeking at the BCNR the first time he was there, there is no obstacle to him filing a new petition at the BCNR. It does not need a remand from this Court or the Court of Federal Claims to get before the BCNR again. Okay. So what do the regulations tell us about concurrency? It's our position that Judge Leto got it absolutely correct. Run us through it, chapter and verse. Okay. So the DOD instruction 6000.13 says that no portion. Is this quoted in the briefs? Not in my briefs. Okay. This is in the decision. Are you referring to DODI 6000.13? I am. And then it's section 6.62? Yes, and then 6.49. Okay. So that's where this regulation is promulgated pursuant to the authority that's been cited by your adversary? I believe so, yes. So there's a proper delegation of that authority, right? Yes. And something that... Is this referring to all the periods of service he's talking about here? He has, I mean, he has several. He's gone to school, and then for a couple of times, then he goes to place for one year, and then he goes someplace else. Yes. Is all of that service governed by this regulation? Yes. Is there any... And this regulation states on its face, right? That no portion of the active duty service can be satisfied concurrently with any other active duty service or an obligation incurred? Correct. And we believe that no, that begins that no portion is global, is encompassing. So unless there is an exception, there is an exception for training performed at a military facility, which Commander Laughlin did not do, then it all has to be... His training is on civilian facilities? Yes. And this covers that? Yes. And it's a blanket provision. So let me ask you my schism question. Which side of schism does this case fall on? I know the department was...  The department was roundly chastised by Judge Friedman many years ago for a case that was on the other side. But this one doesn't fall neatly in the form of military pay or retirement benefits. That's correct, right? Right, right. So, right. Schism doesn't... It is governed by statute and regulation. Yes. So the part of schism that the government always prefers, that it's governed by statute and regulation, I think as Mr. Montalvo has made clear, that this isn't directly a contract that he's arguing for directly for the military incentive pay that he's seeking, rather that it's a contract concerning Commander Laughlin's active duty obligation that has some downstream effects potentially based on what Commander Laughlin was thinking that he wanted to do with his career that may implicate the special incentive pay. So to the extent that there's... So if we're going to go to the ability to contract outside the scope of these regulations we've just talked about to determine someone's... Or the ability to contract in contradiction to the regulation. Thank you. That is where I was going to go. Yes, in contradiction. The one statute we haven't talked about but Judge Leto cites, 10 U.S.C. 2005, provides generally that the secretary may require written agreements from service members as a condition of receiving advanced education, just like Commander Laughlin did. That's 10 U.S.C. 2005 you said? Yes. And those kinds of agreements were achieved here? There are agreements. There are agreements like this. There was some issue, I don't believe that it's being litigated here, as to whether Commander Laughlin signed one of those. Would the agreements go to the number of years involved? Is that what they do? They do. And then the subpart, and that's what I was going to say, subpart A describes what the They deal with the concurrency issue too, right? Well, the way that, yes, they refer to the regulations. Do we have all these agreements in the record? You do. And in the appendix, I believe. Can you tell us where? Well, maybe somebody can look it up and tell us. The briefing, personally, hasn't been very helpful to me to try to resolve some of these issues we're talking about now. I agree. And to be sure, we raised schism for you that hadn't been raised in the briefs. Right. We were under the impression that this was a request for a remand. Do these agreements deal, for example, with a particular type of training that Commander Laughlin was expecting to receive? Yeah. In general, they're, you know, for his undergraduate, first graduate. With the type of training that tends to make it look like the case falls on the safe side of schism. Yes. Assuming that there isn't a bar to the contract theory simply because of the fact of the regulation. I would say, look back at the statute, 10 U.S.C. 2005, it stipulates that the agreement shall include the type of training that's going to be received and that there will be an active duty payback obligation. Service member has to perform both. Subsection A-2 provides that if the service member fails to complete the education, that has to fulfill the active duty obligation service. Subsection 3, if the service member doesn't complete the active duty or doesn't fulfill the training obligation, they're subject to repayment in such other conditions as the Secretary may prescribe. Subsection B- You have to serve the extra time if you don't complete? If you don't, yeah. Basically, if you sign up for- That went into a two-year training period and he's going to have to do two more years of service as a result of that. Yes. But he flunked out after the first year of the two-year training. He was still owed two years. That's what it says. And then subsection B of 10 U.S.C. 2005 says that the active duty period is determined by the Secretary unless there's a provision of law that specifies what that active duty obligation is supposed to be. And if that's the case, the agreement must reflect that. And that's where you go to section 6000. The individuals that made the promises to Commander Laughlin that he believes they made in terms of being able to serve in a concurrent fashion instead of consecutive, what authority did they have to bind the government by contract? Under what we just talked about, I would say they don't have any authority to bind the government by contract that's inconsistent with- Under this 2005? 10 U.S.C. 2005 subsection B. And what does section D say again? Sorry, B isn't void. It says that these written agreements that can accompany these service for training arrangements, they have to stipulate what the active duty repayment obligation is going to be. And the Secretary has some latitude unless there's any provision of law that specifies what that active duty payment must be. In other words, this agreement cannot exceed if there's a regulation as there is at 6000.13. You're saying that this regulation expressly would prohibit any sort of implied contract. Thank you. Yes, that's a much more succinct way. So what does the contract say about concurrency? Can you give me one of those? I believe it says that it reflects what the regulation says that the written contract will say if you are in a civilian- Quote for us the portion of the written contract that deals with concurrency. All right, so we're looking at the Joint Appendix 436. 436 to 437. Which volume is that? You know, I didn't- Yeah, probably volume two. Thank you. Okay. This is the contract? This is one of them. So where does it deal with concurrency? Paragraph two begins, or concurrency, it- Oh, here it is. Paragraph three on page 437. OVC, McCarroll. 2B. I'm sorry, on page 437, three. Paragraph three. It says time spent in any GPE program does not fulfill previously incurred ADO obligation. ADO incurred from this agreement and any other ADO will be satisfied concurrently for training in a military facility and consecutively for training in a civilian facility at the conclusion of the training program. So it references the regulations and draws that distinction between what location you're receiving your training. So your argument would be that even if the- his contract dooms his theory? Well, yeah. This contract is consistent with the applicable statutes and regulations. The contract that he would be seeking to enforce, and he's arguing now that he has a different contract than the contract he signed. Yeah, that's why I hesitated. He says he didn't sign it, right? Yes, and in fact, I believe this is the copy that he says he didn't sign. If you look on 437, there's not a signature on it. You said that was a dispute below, but it's not here on appeal? I don't understand that to be briefed or between the parties here. So that would be something that would be conceded at this point? Yes, that would be our position. Is it so that he didn't sign the contract? I'm sorry? He did not sign? Not this particular copy, no. Is there any copy that he did sign? Again, this is one of them for his several different types of trainings. I believe that this one contract was not signed. However, he did receive all of his training, and he has subsequently, after he was at the BCI. Is your theory that the contracting officer would lack authority to enter into any type of a contract and provide, in fact, or otherwise, that didn't respect the concurrent consecutive union? Yes, that's our position. Also, the other agreements that he signed, and I'm sorry that I don't have one handed for you, contain the same language. And so we go to that part in schism, the discussion of you can't have an implied contract that is in contradiction to your written terms. It will help the court. What's the administrative record that's in front of us? Does it include what went to the secretary after the BCNR concluded its proceedings? It does. Some, yes. Now, how does that impact Commander Laupin's desire to be sent back to the BCNR at this stage in the year? The Court of Federal Claims, considering the pay issue that was properly before and under the Tucker Act, could consider this originally. It has original jurisdiction to do that. It does not have to send it back to the BCNR. Had Commander Laughlin made that request during the proceedings below, I can assure you we would have acceded to that. We do as a normal course. Some decisions from this court as far back as Heisig acknowledge that that is our normal practice. But that didn't happen. But there's nothing in this new material that bears on the authority of these individuals in the Navy to make promises that contradicted the contract and the regulations, right? There is not, no. But the boards... Your position is that the absence of authority in the hands of the people making the promises is fatal to any contract claim you would try to mount? Certainly in the Court of Federal Claims, the board's authority is to correct errors or injustices. As I think this case is an example, they will follow the statutes and regulations. However, the law that says we shouldn't presume what another body has discretion, I guess, to do. If they reconsidered it, I suppose there's every possibility that they might look at this. And again, there's nothing... There's no statute of limitations standing in Commandant Loftin's way. I'm just simply going back... You're saying... You're giving away more than I thought you would. You're saying that the authority of the BCNR is so expansive that it could find here an implied impact contract even though there is no authority whatsoever for the government to have entered into it. I'm not saying exactly that. I'm saying it's not... It could pledge the fisk in the face of the law. It's not coterminous with that of the Court of Federal Claims and languages broader. They could decide that it was unfair because people told him that it could be concurred, that it wasn't allowed to be concurred. They can do equity. Even though he had no legal right to that. Correct. I'm not predicting that that would happen. And then if they decided that, the Navy would be able to go to the Secretary and ask for a review of that decision. Correct. OK. Anything further? Nothing. We just respectfully request that this Court affirm the decision of the Court of Federal Claims. OK. Thank you, Mr. Mr. Montalvo, you have three minutes. I'm asking the Court to consider Appendix 341. This is an email between Commander Carson and Commander Laughlin, dated September 3, 2010, which addresses the fact that there was no contract. He was the first one. There's no precedent for the process, and they're not going to have the paperwork to accompany it. And so the contract that the government was just referring to is the fellowship contract, which came some time later. So the issue of the ADO, this is addressed here in the doings. So converting him from a civilian status to his active duty status, not the later on fellowship contract, which was also not signed. And if the Court saw on the record that they later on tried to get Commander Laughlin to sign that document after he was raising the issue. And the issue arose in Appendix 340, when Commander Laughlin is asking to confirm his understanding of what is happening. And this is September 3, 2010. And the special pay section, which controls this issue, says, according to the BUMed database, your obligated service date for training is July 2012. And so that was after an audit. So in 2010, when he's asking about this, they inform him that his date is exactly what was promised, which is the concurrent payback authority. And then as far as the authority to bring or give the approval to come on to instruction, that's BUMed instruction 1520-41, which says that the applicants for GDA training are selected at the annual doings board or approved by the chief of the Naval Dental Corps. So the chief of the Naval Dental Corps is the one who reached out to Commander Laughlin and then negotiated this issue. As it relates to the ADO clarity or whether these are all addressed, if we look at Appendix 35, which is the BUMed notice from the Surgeon General, it goes through a very detailed discussion about the fact that the ADO determinations are a very confusing issue. It says there are many factors involved in the calculation of OSDs and ADOs. And there are situations where guidance set forth does not specifically address how OSDs and ADOs should be calculated, requiring the need for further clarification. And in fact, later on in that particular appendices, in page Appendix 40, it talks about, in one of the examples, ADO for GME will be served consecutively per reference. C, no active duty obligation for GME can be served concurrent with an ADO for a second period of GME. Is this some of the new evidence that you're relying on, that you think there should be a remand authority? Is that what you're saying? In part, yes, Your Honor. Yes, Your Honor. So the issue, again, and then if we look at Mr. Marin's letter, who is the head of the section that governs the determination after being confronted with us after a couple of years of going back and forth, he then reaffirms that using the mental core methodology for obligations, that his HPSP obligation runs concurrent with the residency obligation. So this is the person that is in charge for the Navy of making the interpretation and determining his obligation. And he comes out very close to what Commanders Laughlin was asserting. OK, Mr. Montalvo, I think we're out of time. Yes, Your Honor. Thank you. May it please the Court. Thank you, Your Honor. Happy holidays.